# In the
# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-2947

IN THE MATTER OF:

　　GREGORY KLEYNERMAN,

　　　　　　　　　　　　　　　　　　　　　　　　*Debtor.*

APPEAL OF:

　　SCOTT SMITH

———————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 22-CV-162-JPS — **J.P. Stadtmueller**, *Judge.*

———————————

ARGUED SEPTEMBER 19, 2023 — DECIDED FEBRUARY 27, 2024

———————————

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Gregory Kleynerman and Scott Smith fell out, and their business dissolved in acrimony. Smith sued Kleynerman in Wisconsin and obtained a judgment of $499,000, which the state's judiciary provided would be secured by his membership interest in Red Flag Cargo Security Systems LLC. Kleynerman then filed for bankruptcy.

Smith contended in the bankruptcy that the state court's judgment reflected Kleynerman's fraud and so could not be

discharged. 11 U.S.C. §523(a)(4). The bankruptcy court rejected that contention. For his part, Kleynerman valued his interest in Red Flag at $0 and invoked an exemption for property worth $15,000 or less. (This state-law exemption, Wis. Stat. §815.18(3)(b), is incorporated into federal bankruptcy law by 11 U.S.C. §522(b)(3)(A).) Having lost his argument that Kleynerman had committed fraud, Smith did not object either to the $0 valuation or the discharge.

Smith was not done, however. When Kleynerman asked the state court to deem the $499,000 judgment discharged, Smith contended that, under Wis. Stat. §806.19(4), only debts secured by real property can be avoided. The state's judiciary agreed with Smith, which led Kleynerman to ask the bankruptcy court to reopen the case and provide expressly that both the $499,000 debt and the lien on Kleynerman's interest in Red Flag no longer exist.

The bankruptcy court obliged, 638 B.R. 111 (Bankr. E.D. Wis. 2022), and the district court affirmed, 647 B.R. 196 (E.D. Wis. 2022). Security interests and other liens often pass through bankruptcy unaffected, see *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991), but there are exceptions—among them one for assets exempt from execution. The effect of an exemption is a matter of federal rather than state law. Kleynerman claimed an exemption; the Trustee agreed with that $0 valuation and abandoned the asset as worthless; Smith did not argue otherwise before the discharge was entered.

Under the Bankruptcy Code, "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien, other than a judicial

lien that secures a debt of a kind that is specified in section 523(a)(5)". 11 U.S.C. §522(f)(1). The bankruptcy judge concluded that Smith's interest was a "judicial lien" that could be avoided because enforcing it would impair Kleynerman's exemption, and the lien was not "a kind that is specified in section 523(a)(5)" (which deals with domestic-support obligations). That's straightforward—if Red Flag really was worth less than $15,000 when Kleynerman filed for bankruptcy. (During the bankruptcy proceedings Red Flag landed a big contract and may be worth a good deal today, but the filing date is the time for valuation of an asset claimed as exempt.)

Smith's lead argument on appeal is that the bankruptcy judge should not have reopened the proceeding to entertain Kleynerman's request. Yet the bankruptcy judge had authority: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b). All the court needed was "cause", which the state judiciary's decision supplied. A debtor who has cause for reopening cannot dilly-dally, but Kleynerman sought reopening 70 days after the discharge's entry and 36 days after the state judge's post-discharge decision. Smith has not cited any case deeming 70 days too long. A court should exercise discretion under §350(b) without causing needless prejudice to anyone, and the bankruptcy judge ordered Kleynerman to pay the legal costs that Smith had incurred in the post-discharge litigation in state court, so that Smith would not suffer prejudice from the absence of an express §522(f) clause in the original discharge. Our opinion in *Redmond v. Fifth Third Bank*, 624 F.3d 793 (7th Cir. 2010), catalogs these and other things for a bankruptcy judge to consider. None was overlooked. Like the district judge we

conclude that the bankruptcy judge did not abuse her discretion in reopening.

Smith's other appellate contention is that the bankruptcy judge refused to entertain his argument that Kleynerman's interest was worth more than $15,000. No one doubts that a bankruptcy judge must listen to such an argument. See Fed. R. Bankr. P. 4003(d). But *when* must the bankruptcy judge entertain it? The bankruptcy judge and district judge thought that the right time is before the discharge, not afterward, and we agree with that conclusion (with a qualification below). Rule 4003(b)(1) requires a party in interest to object to a claimed exemption within 30 days of the meeting of creditors. That meeting occurred on October 4, 2018, giving Smith until November 3 to object (unless he sought an extension under the terms of the Rule, as he did not). But Smith did not object then or at any other time before the bankruptcy court entered its discharge order on December 12, 2019. Nor did he seek additional information to facilitate an objection.

Rule 4003(d), which applies to proceedings under §522(f) to avoid liens, does not have a separate time limit. That leaves timing to the discretion of the bankruptcy judge. See *In re Schoonover*, 331 F.3d 575 (7th Cir. 2003). *Schoonover* rejects an argument that lienholders are subject to the same time limit as other creditors under Rule 4003(b). But bankruptcy judges can set and enforce time limits under Fed. R. Bankr. P. 9014.

During the main bankruptcy proceedings Smith tried and failed to persuade the judge that the $499,000 was not dischargeable. After that he was quiescent until the discharge. Smith next mounted an argument in state court. In February 2020, after the discharge had been entered, Smith sought permission from the bankruptcy judge to issue extensive

subpoenas that would (Smith said) yield information about the value of Kleynerman's interest in Red Flag. The bankruptcy judge deemed this a fishing expedition—worse, an exercise in harassment—and denied the requests. The district court concluded that this was not an abuse of discretion, and again we agree. It was too much, too late. Carefully targeted requests might have been appropriate, given the difference between Rule 4003(b) and Rule 4003(d), but Smith's blunderbuss requests were anything but carefully targeted.

Before the discharge, Smith knew that Kleynerman had received about $600,000 in income from Red Flag during 2016 and 2017, plus another $51,000 in 2018 before the bankruptcy began. These numbers were disclosed in Kleynerman's own schedules. Smith also had the financial statements for Alpha Cargo, the predecessor to Red Flag that ran the business when Kleynerman and Smith were on speaking terms. Smith could have used this information to contest Kleynerman's assertion that his interest in Red Flag was worth less than $15,000. If the bankruptcy judge had determined, in response to such an argument, that Smith needed more information, he could have proposed subpoenas then and there—and, if the bankruptcy judge said no, Smith could have appealed to the district court (from the final decision) and ultimately to us. But he did none of this. He put all of his eggs in one basket (the fraud objection to discharge) and let the valuation of Red Flag pass without objection. That left only Kleynerman's assessment, which the bankruptcy judge was entitled to accept, plus the blunderbuss post-discharge subpoenas, which were properly rejected.

Affirmed